UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CRIMINAL MINUTES—GENERAL

| Case No. | **EDCR 24-0193 JGB** | Date | July 21, 2025 |
|---|---|---|---|
| Title | *United States of America v. Ari Aki Young* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Government: | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    Order (1) DENYING Defendant's Motion to Dismiss Count One of the Indictment (Dkt. No. 40); and (2) DENYING Defendant's Motion to Dismiss Count Two of the Indictment (Dkt. No. 42)**

Before the Court are Defendant Ari Aki Young's motion to dismiss count one of the indictment ("First MTD," Dkt. No. 40) and motion to dismiss count two of the indictment ("Second MTD," Dkt. No 42) (collectively, "Motions"). The Court held a hearing on the Motions on June 2, 2025. After considering the oral argument of the parties, and the papers filed in support of and in opposition to the Motions, the Court now issues this Order setting forth the reasons for **DENYING** the Motions.

## I.  BACKGROUND

Defendant Ari Aki Young ("Defendant" or "Young") is charged with following crimes: (1) interfering with commerce by robbery in violation of 18 U.S.C. § 1951(a) (hereinafter referred to as "Hobbs Act Robbery") ("Count One"); (2) using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii) (hereinafter referred to as "Section 924(c)") ("Count Two"); and (3) possessing a stolen firearm and stolen ammunition in violation of 18 U.S.C. § 922(j). ("Indictment," Dkt. No. 26.)

On May 1, 2025, Defendant filed the First MTD. (First MTD.) In support of the First MTD, Defendant filed thirty-two exhibits. ("First MTD Exhibits A-P," Dkt. No. 40-1-32.) On May 15, 2025, the United States of America (the "Government") opposed the First MTD. ("First MTD Opp.," Dkt. No. 43.) In support of its Opposition, the Government filed five

exhibits. ("First MTD Opp. Exhibits 1-5," Dkt. No. 43-1.) Defendant replied on May 23, 2025. ("First MTD Reply," Dkt. No. 46.)

On May 5, 2025, Defendant filed the Second MTD. (Second MTD.) On May 19, 2025, the Government opposed the Second MTD. ("Second MTD Opp.," Dkt. No. 45.) Defendant replied on May 27, 2025. ("Second MTD Reply," Dkt. No. 47.)

The Court held a hearing on June 2, 2025, at which the parties presented oral argument on the Motions.

## II.   FACTUAL ALLEGATIONS

The Government alleges that, on or about September 4, 2019, in San Bernardino County, Defendant obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, by knowingly and willingly committing a robbery. (Indictment at 1.) Specifically, Defendant unlawfully took and obtained property consisting of a service weapon and ammunition belonging to the San Bernardino County Sheriff's Department ("SBCSD"), the inventory of which traveled in interstate commerce. (Id. at 1-2.) Defendant took the service weapon and ammunition from the person and in the presence of an on-duty SBCSD Deputy Sheriff, against their will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to the SBCSD Deputy Sheriff. (Id. at 2.)

The Government further alleges that Defendant knowingly used and carried the service weapon—a Glock, model 17 Gen4, 9mm handgun, bearing serial number SSX549—during and in relation to a crime of violence (i.e., Hobbs Act Robbery as charged in Count One of the Indictment), and, in so doing, brandished and discharged that firearm. (Id. at 3.)

The Government also alleges that Defendant knowingly possessed the stolen service weapon and 16 rounds of stolen Winchester 9mm Luger +P caliber ammunition, which had been shipped and transported in interstate and foreign commerce. (Id. at 4.) Defendant knew and had reasonable cause to believe that such firearm and ammunition had been stolen. (Id.)

## III.  LEGAL STANDARD

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1).

### A.  Motion to Dismiss

On a pre-trial motion to dismiss an indictment for failure to state an offense, district courts are "bound by the four corners of the indictment, must accept the truth of the allegations in the indictment, and cannot consider evidence that does not appear on the face of the indictment." United States v. Kelly, 874 F.3d 1037, 1047 (9th Cir. 2017). Counts in an indictment are sufficient so long as it tracks the statutory language and unambiguously sets forth

the elements of the offenses charged.  United States v. Milovanic, 678 F.3d 713, 727 (9th Cir. 2012); United States v. Crow, 824 F.2d 761, 762 (9th Cir. 1987) ("The use of a 'bare bones' information—that is one employing the statutory language alone—is quite common and entirely permissible so long as the statute sets forth fully, directly and clearly all essential elements of the crime to be punished").  The Government is not required to allege in counts of an indictment the facts necessary to prove the elements of the crimes.  United States v. Bellamy, 521 Fed. Appx. 590, 592 (9th Cir. 2013).

It is well-established that a "district court cannot grant a motion to dismiss an indictment if the motion is substantially founded upon and intertwined with evidence concerning the alleged offense."  United States v. Lundstedt, 997 F.2d 665, 667 (9th Cir. 1993) (internal quotations omitted); see also United States v. Jensen, 93 F.3d 667, 668 (9th Cir. 1996) ("A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence").  A motion to dismiss an indictment can be determined before trial if it presents legal, rather than factual, issues.  United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th Cir. 1986).

## IV.   DISCUSSION

Defendant moves to dismiss Count One of the Indictment because the Government cannot establish that the alleged robbery affected interstate commerce.  (See First MTD.) Defendant also moves to dismiss Count Two of the Indictment because it fails to state an offense. (See Second MTD.)

### A.  First Motion to Dismiss—Count One

Defendant asserts that he "has not placed himself within the crosshairs of Hobbs Act criminal liability."  (First MTD at 11.)  At the outset, Defendant contends that the alleged robbery was that of an individual—the SBCSD Deputy Sheriff.  (See id.)  As such, Defendant argues Count One should be dismissed because Young did not: (1) deplete the assets of an individual directly and customarily engaged in interstate commerce; (2) cause or create the likelihood of depleting the assets of an entity engaged in interstate commerce; and (3) impact interstate commerce through the cumulative number of his victims or the vastness of the amount of money at stake.  (See id. at 11-15.)

The Government counters that the Indictment is sufficient on its face as to Count One pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)[1] and therefore cannot be dismissed. (See First MTD Opp. at 11-13.)  Even if the Court could look beyond the Indictment, the Government asserts that the robbery affected interstate commerce because: (1) Congress exercised the full extent of its Commerce Clause power in enacting the Hobbs Act; (2) Defendant robbed SBCSD, not just the SBCSD Deputy Sheriff; (3) SBCSD is an entity engaged in

---

[1] All subsequent references to "Rule" refer to the Federal Rules of Criminal Procedure, unless otherwise noted.

commerce; (4) the robbery economically affected SBCSD; and (5) the objects of the robbery were firearms and ammunition manufactured out of state.  (See id. at 14-23.)

The jurisdictional element of the Hobbs Act requires that the robbery have at least a de minimis effect on interstate commerce.  See U.S. v. Woodruff, 122 F.3d 1185, 1185-86 (9th Cir. 1997).  The Ninth Circuit has consistently upheld convictions under the Hobbs Act where the effect on interstate commerce was "slight."  See, e.g., United States v. Pascucci, 943 F.2d 1032, 1035 (9th Cir. 1991) (finding an effect when defendant threatened to deliver embarrassing audio tapes to his victim's employer, a corporation engaged in interstate commerce); United States v. Hanigan, 681 F.2d 1127, 1130–31 (9th Cir. 1982) (finding an effect when defendant robbed three undocumented farm workers, affecting the movement of labor across borders); United States v. Phillips, 577 F.2d 495, 501 (9th Cir. 1978) (finding an effect when defendant's extortion threatened the depletion of resources from a business engaged in interstate commerce) (internal quotations omitted).

However, the Hobbs Act's jurisdictional reach is limited as courts have routinely recognized a distinction between the robbery of a business and the robbery of an individual in defining what constitutes de minimis effect on interstate commerce.  See United States v. Kane, 2013 WL 5797619, at *6 (D. Nev. Oct. 28, 2013).  To date, at least eight Circuit Courts have held that the Hobbs Act does not automatically apply to the robbery of an individual.  See id. (citing United States v. Perrotta, 313 F.3d 33, 36 (2nd Cir. 2002); United States v. Lynch, 282 F.3d 1049, 1053 (9th Cir. 2002) ("Lynch I" ); United States v. Diaz, 248 F.3d 1065, 1084–85 (11th Cir. 2001); United States v. Wang, 222 F.3d 234, 238–40 (6th Cir. 2000); United States v. Quigley, 53 F.3d 909, 910–11 (8th Cir. 1995); United States v. Collins, 40 F.3d 95, 99–101 (5th Cir. 1994); United States v. Buffey, 899 F.2d 1402, 1404–06 (4th Cir. 1990); United States v. Mattson, 671 F.2d 1020, 1023–25 (7th Cir. 1982)).

When an individual is robbed, and the robbery is alleged to have had an indirect effect on interstate commerce, Ninth Circuit law (i.e., the Lynch test) requires a heightened jurisdictional showing.  See Lynch I  at 1053 (adopting Collins, 40 F.3d at 100).[2]  Under the Lynch test, the Hobbs Act only applies if (1) the acts deplete the assets of an individual who is directly and customarily engaged in interstate commerce; (2) the acts cause or create the likelihood that the individual will deplete the assets of an entity engaged in interstate commerce; or (3) the number of individuals victimized or the sum at stake is so large that there will be some cumulative effect on interstate commerce.  Id.; see also United States v. Rodriguez, 360 F.3d 949, 955 (9th Cir. 2004).

---

[2] Lynch I was overruled by Lynch II, which held the following: "The government may establish jurisdiction for prosecution under the Hobbs Act for a crime directed toward an individual by showing either that the crime had a direct effect or an indirect effect on interstate commerce. Any statement to the contrary in Lynch I is overruled."  See United States v. Lynch ("Lynch II"), 437 F.3d 902, 916 (9th Cir. 2006), overruled in part on other grounds by United States v. Lucas, 101 F.4th 1158 (9th Cir. 2024).

**CRIMINAL MINUTES— GENERAL**          Initials of Deputy Clerk MG

The Court agrees with the Government that in a Rule 12(b) motion, the Court is "bound by the four corners of the [I]ndictment, must accept the truth of the allegations in the [I]ndictment, and cannot consider evidence that does not appear on the face of the [I]ndictment." See Kelly, 874 F.3d at 1047; see also Jensen, 93 F.3d at 669 ("A defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence.") (quoting United States v. Mann, 517 F.2d 259, 267 (5th Cir. 1975), cert. denied, 423 U.S. 1087 (1976)).  The Court also agrees with the Government that it has sufficiently plead the Hobbs Act Robbery charge against Defendant.

To secure a conviction for Hobbs Act robbery, a grand jury must set forth in the indictment, and the government must prove, two elements: "(1) that the defendant either committed or attempted to commit a robbery, and (2) a nexus between the defendant's acts and interstate commerce."  United States v. Tuan Ngoc Luong, 965 F.3d 973, 985 (9th Cir. 2020) (quoting United States v. Woodruff, 122 F.3d 1185, 1185 (9th Cir. 1997) ("Woodruff II")).  But while "the interstate commerce nexus is an element that 'must be proved at trial[,] . . . it need not . . . be expressly described in the indictment.'"  Id.  In Woodruff I, the Ninth Circuit held that "[a]lthough the indictment contained no facts alleging how interstate commerce was interfered with, and did not state any theory of interstate impact," the indictment was sufficient on its face.  See United States v. Woodruff, 50 F.3d 673, 676 (9th Cir. 1995) ("Woodruff I")).  Here, the Indictment alleges that Young committed a Hobbs Act Robbery by robbing a service weapon and ammunition—inventory that traveled in interstate commerce—from a SBCSD Deputy Sheriff.  (See Indictment at 1-2.)  That is sufficient at this stage.  See Tuan Ngoc Luong, 965 F.3d at 985 ("The indictment was not required to allege facts specifically outlining how [defendant's alleged criminal conduct] affected interstate commerce").

The Court finds that the First MTD implicates evidentiary issues that cannot be addressed in a pre-trial motion to dismiss because it raises inherently factual questions that "invade the province of the ultimate finder of fact."  See Shortt Accountancy Corp., 785 F.2d at 1452; Lundstedt, 997 F.2d at 667 (a "district court cannot grant a motion to dismiss an indictment if the motion is substantially founded upon and intertwined with evidence concerning the alleged offense") (internal quotations omitted); Jensen, 93 F.3d at 668 ("A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence."); (see also First MTD Opp. at 10-13.)  Specifically, Defendant asks the Court to conclude whether he allegedly robbed an individual or an entity, and whether and to what extent his conduct affected interstate commerce.  (See First MTD; First MTD Opp. at 10-13.)

Moreover, although the Court agrees with Defendant that the determination of which interstate commerce test applies to this case (i.e., robbery of a business versus robbery of an individual) is a question of law for the Court to decide, the Court is not able to make that determination at this juncture because it also implicates factual questions.  (See First MTD Reply at 2.)  Defendant himself argues that the alleged robbery was that of an individual, in part, because the SBCSD Deputy Sheriff attempted to illegally detain him first, and "California law makes it clear that by performing this illegal detention, the Deputy [] loses her cloak of authority as a police officer."  (See First MTD at 12 (citing Evans v. City of Bakersfield, 22 Cal. App. 4th

**CRIMINAL MINUTES— GENERAL**  Initials of Deputy Clerk MG

321, 331 (1994) (stating that the "legal effect of an unlawful detention is to remove the cloak of authority from the officer, because the officer is not acting in the performance of his or her duties"); <u>People v. DeLorea</u>, 2010 WL 2096935, at *5 (Cal. Ct. App. May 26, 2010) ("[I]f it is ultimately determined that the officer acted without legal authority, [a resisting defendant] . . . cannot be guilty of assault or battery ***on an officer*** or resisting ***an officer***.") (emphasis in original); <u>People v. Carlon</u>, 2019 WL 2335686, at *6 (Cal. Ct. App. May 31, 2019) ("It is also well established that because a police officer is not permitted to use unreasonable or excessive force in arresting or detaining an individual, the individual is lawfully entitled to use reasonable force to defend himself.")); First MTD Reply at 11.)  However, the lawfulness of a detention often involves disputed facts that are material to the probable cause determination for that arrest, rendering it an issue ripe for the jury.  (<u>See</u> First MTD Opp. at 13 ("Through his motion, defendant asks this Court to litigate a combination of Fourth Amendment issues, factual disputes, and policy considerations, all under the guise of a Rule 12(b) dismissal request.")); <u>see also</u> <u>United States v. Hernandez</u>, 322 F.3d 592, 596 (9th Cir. 2003) (finding that whether an arrest is supported by probable cause is typically a mixed question of law and fact).

Finally, the Court recognizes that the facts of this case do not fit neatly into the legal frameworks developed around the jurisdictional element of a Hobbs Act Robbery.  However, the Court is not presently in the position to conclude that SBCSD is not an entity covered by the Hobbs Act Robbery statute because it is neither a business nor an individual, or to adopt "a new third test" to evaluate the conduct at issue in this case.  (<u>See</u> First MTD Reply at 3.)  This conclusion is bolstered by the fact that the modified analytical frameworks proffered by Defendant all implicate factual questions that are not proper for a Rule 12(b) motion.  (<u>See</u> <u>id.</u> at 5-8 (describing the functional-context test framework as having a "fact-pattern lens"; describing the capacity-of-the-agent test as asking whether the officer has stepped outside the scope of their lawful authority; describing the commerce-activity test as requiring the Government to "show that the robbery disrupted an identifiable, ongoing commercial activity of the agency itself" "or that the robbery obstructed the agency's active facilitation of interstate commerce").)  Accordingly, the Court **DENIES** the First MTD.

### B.  Second Motion to Dismiss—Count Two

Defendant contends that Count Two should be dismissed because the Government cannot allege that he both robbed a firearm and used that same firearm during and in relation to the robbery.  (<u>See</u> Second MTD at 2-7.)  Defendant further asserts that a Hobbs Act Robbery is not a categorical crime of violence and cannot serve as a predicate offense for Count Two's alleged violation of Section 924(c).  (<u>See</u> <u>id.</u> at 7-12.)  The Court addresses each argument in turn.

First, Defendant asserts that "based on the plain language and four corners of the [I]ndictment, the [G]overnment has failed to state a claim" because the Government alleges that the firearm was the object of the robbery and, therefore, Young could not have "used" the same firearm during the alleged robbery.  (<u>See</u> <u>id.</u> at 5.)  In other words, Young "did not have possession of the firearm until it was allegedly robbed."  (<u>Id.</u>)  Notably for the Defendant, Count

Two as charged in the Indictment is flawed because "there is no separate conduct or distinction in time between the alleged robbery and the alleged 'use' of the firearm."  (See id. at 7.)

The Government counters that "Defendant cannot meet his burden of showing that—as a matter of law—a firearm stolen during a robbery can never support a § 924(c) charge."  (Second MTD Opp. at 1.)  The Government further argues that whether Defendant used and carried a firearm during and in relation to the robbery are "factual questions that the jury will have to decide at trial, not legal questions that the Court can decide upon a pretrial motion to dismiss."  (Id. at 2.)  The Court agrees with the Government.

The Court cannot conclude as a matter of law that a firearm allegedly both stolen, carried, and used during a robbery cannot support a Section 924(c) charge.  See, e.g., United States v. Reid, 517 F.2d 953, 955-56, 965 (2d Cir. 1975) (finding that a "robbery of the property of the United States"—or a DEA agent's gun and badge while he was investigating a commotion . . . [in a] [] liquor store"—could support a Section 924(c) charge because "[a]t the time of the shooting [the DEA agent] had not given up on the prospect of arresting the defendant[] and retrieving his revolver. . . . Moreover, both before and after the shooting, there was always a chance, however small, of intervention by other law enforcement officers or good Samaritans.").

Further, "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt."  Alleyne v. United States, 570 U.S. 99, 103 (2013) (citing Apprendi v. New Jersey, 530 U.S. 466 (2000)).  As such, determining whether a Section 924(c) charge is supported here implicates inherently factual questions that "invade the province of the ultimate finder of fact."  See Shortt Accountancy Corp., 785 F.2d at 1452.

Moreover, the Court disagrees with Defendant that the Government's intention to "seek a superseding indictment to add the allegation that defendant possessed the firearm in furtherance of the robbery" violates the Speedy Trial Act.  (See Second MTD Opp. at 1 n.1; Second MTD Reply at 2-3.)  The Court notes that "[a] balance must be struck between th[e] discretion [the Government has in the timing of indictments], the rights of the defendants, and the orderly administration of justice by the courts."  United States v. Van Brandy, 563 F. Supp. 438, 441 (S.D. Cal. 1983).  However, "[t]he Speedy Trial Act requires the Government to indict the defendant within thirty days on the 'charge' or 'offense' contained in the complaint," "[t]herefore, [] superseding indictment[s], . . . issued while the original indictment [is] pending and which reassert[] the same charge, [is] timely."  United States v. Carrasco, 257 F.3d 1045, 1052 (9th Cir. 2001); cf United States v. Palomba, 31 F.3d 1456, 1464 (9th Cir. 1994) (finding that "the superseding indictment charged [a defendant] in an untimely manner with an offense which was contained in the *complaint* but which was not preserved against Section 3162(a)(1) dismissal either by such facial factual differences or by inclusion in the *timely original indictment*") (emphasis added); Van Brandy, 563 F. Supp. at 441 (dismissing three *new charges* included in the superseding indictment because the Government violated the Speedy Trial Act when it was "in possession of all facts needed to proceed with its superseding indictment, [but waited] until the eve of trial, some three months later, to file its superseding indictment").

---

**CRIMINAL MINUTES—GENERAL**      Initials of Deputy Clerk MG

Second, even if the Supreme Court has left the question open, the Ninth Circuit has held that "Hobbs Act robbery is a crime of violence" pursuant to 18 U.S.C. § 924(c)(3)(A). <u>United States v. Eckford</u>, 77 F.4th 1228, 1236 (9th Cir. 2023); (<u>see also</u> Second MTD at 3 n.1 (conceding same)); <u>Hart v. Massanari</u>, 266 F.3d 1155, 1170 (9th Cir. 2001) ("A district judge may not respectfully (or disrespectfully) disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue, or with Supreme Court Justices writing for a majority of the Court. Binding authority within this regime cannot be considered and cast aside; it is not merely evidence of what the law is. Rather, caselaw on point *is* the law. If a court must decide an issue governed by a prior opinion that constitutes binding authority, the later court is bound to reach the same result, even if it considers the rule unwise or incorrect. Binding authority must be followed unless and until overruled by a body competent to do so.") (emphasis in original). Accordingly, the Court **DENIES** the Second MTD.

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motions.

**IT IS SO ORDERED.**

CRIMINAL MINUTES—<br>GENERAL

Initials of Deputy Clerk <u>MG</u>